**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUCIA GARCIA, | ) | |
| | ) | |
| | ) | Case No. 23-cv-11493 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| JASON CLIFT, MASON SARTI, | ) | |
| Individually, and the CITY OF OTTAWA | ) | |
| and the CITY OF STREATOR, | ) | |
| a Municipal Corporation | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lucia Garcia ("Garcia"), brings this action against Defendants, Jason Clift ("Officer Clift") and Mason Sarti (Officer Sarti")(together, "Officer Defendants"), the City of Ottawa, and the City of Streator (together, "City Defendants") (altogether, "Defendants") stemming from her arrest and 17-day detention after an informant allegedly bought drugs from Garcia on July 12, 13, 14, and 18, 2022, at 607 North Monroe Street in Streator, Illinois. Garcia's Second Amended Complaint ("Complaint") brings claims against the Officer Defendants: false arrest (Count I), illegal detention (Count II), federal malicious prosecution claims (Count III), Illinois malicious prosecution claims (Count IV), and brings indemnification claims, (Count V), against the City Defendants. Presently before the Court are Officer Clift's and the City of Streator's Motion for Summary Judgment [113] and Officer Sarti's and the City of Ottawa's Motion for Summary Judgement [158]. For the following reasons, the Court grants Defendants' Motions in full.

1

I.      **Background**

    **A. Factual Allegations**

The following material facts are not in dispute, unless otherwise noted, and are relevant to resolving both Motions.

       *i.   Tri-Dent Investigation*

The Tri-County Drug Enforcement Narcotics Team ("Tri-Dent") is a multi-jurisdictional narcotics task force composed of various police departments. In 2022, while working for Tri-Dent on behalf of the City of Streator, Officer Clift participated in a drug investigation of James Forbes ("Forbes"), the father of Garcia's two children. Officer Clift, with the help of an informant, Anthony Gibson ("Gibson"), facilitated several controlled drug buys from Forbes' residence located at 607 North Monroe Street, Streator, Illinois. During the drug buys, Tri-Dent placed a camera with audio and video capabilities on Gibson. Out of all the controlled drug buys, four of them, occurring on July 12th, 13th, 14th, and 18th , involved the same Latina who provided Gibson with cocaine.

According to Defendants, Officer Clift offered the case to Officer Sarti, who became the lead investigator. Officer Clift did not prepare any reports or paperwork, did not pay the informant, never appeared at any court proceedings, and never discussed the investigation with the LaSalle County Assistant State's Attorney Jason Goode ("ASA Goode"). Garcia, however, denies that Officer Clift was not further involved in the investigation and prosecution. Defendants admit however, as part of their investigation into Forbes, Officer Clift informed Officer Sarti that Forbes shared children with Garcia.

Officer Sarti testified that after learning Garcia's identity, he compared her Facebook photos to the woman depicted in the video and independently identified her as the Latina in question. He then showed the pictures to Officer Clift who verified that the woman from the Facebook photos was Garcia. Finally, Officer Sarti showed Garcia's photos to Gibson, who identified her as the woman

2

from whom he purchased cocaine. While Officer Sarti and Officer Clift testified that Gibson positively identified Garcia as the woman involved in the drug buys, Gibson testified that he did not recall Officer Sarti or Officer Clift showing him a Facebook photo.

### ii. Forbes' Arrests

On July 20, 2022, Officer Sarti and other officers executed a search warrant at 607 North Monroe Street, where they recovered narcotics and a firearm. Forbes was arrested on July 22, 2022, and taken into custody at the LaSalle County Jail. ASA Goode, who previously handled a felony possession case involving Forbes and was aware that law enforcement believed Forbes was distributing heroin and crack cocaine, approved the charges against Forbes. During that earlier prosecution, a victim brought a locker of weapons to law enforcement and stated that the remaining arsenal was with Garcia. ASA Goode believed that Garcia used her real estate background to help Forbes buy properties on tax sales to turn them into drug "dens."

Because of this, in September of 2022, after Forbes' arrest, ASA Goode requested reports regarding Garcia from Officer Sarti. Officer Sarti submitted the requested reports to the ASA in November 2022. Officer Sarti testified that he believed these reports would be utilized for further investigation of Forbes, not for subsequent charges against anyone else; he also stated that, while did not think it was necessary to arrest all the individuals involved with this drug operation, it was up to the State's Attorney's Office to decide who they were going to charge.

### iii. Garcia's Arrest

After reviewing Officer Sarti's reports, conducting his own independent investigation, and based on his prior knowledge of Garcia, ASA Goode believed he had probable cause to seek a warrant for and charge Garcia for the controlled drug buys from July 12, 2022, to July 18, 2022, and filed such charges in October of 2022. Garcia additionally sought an arrest warrant from a LaSalle County Judge, who issued one on October 25, 2022. ASA Good testified that he did not use any information

provided by Gibsson to obtain the arrest warrant, that his decision to bring charges was not influenced by Officers Clift or Sarti, and that he made an independent determination that there was probable cause to arrest Garcia.

On October 31, 2022, Garcia was arrested by the Bloomington Police Department following a traffic stop and was subsequently held on the LaSalle County warrant. After her arrest, on November 7, 2022, ASA Goode proceeded to a grand jury. Officer Sarti testified before the grand jury which returned a true bill indicting Garcia on four counts of Unlawful Delivery of a Controlled Substance.

iv.    *Limited Prosecution*

At a November meeting at LaSalle County Jail that included Garcia, her criminal defense attorney, Officer Sarti, and Officer Sarti's supervisor, Commander Hoster, the parties reviewed still photographs of the woman captured on video by Gibson and compared them to photos of Garcia. At that meeting, Commander Hoster told Officer Sarti that he was not "100% convinced" that Garcia was the Latina who sold drugs to Gibson. Officer Sarti, still believing Garcia was the woman in the video, then reached out to another officer involved in the Forbes investigation, Michael Ray Taylor ("Officer Taylor"), for additional identification assistance.

On November 14, 2022, Officer Taylor met ASA Goode and his two secretaries at the LaSalle County State's Attorney's Office, where ASA Goode presented to Officer Taylor a photo array of approximately six pictures of the Latina woman captured on Gibson's body camera to verify if it was Garcia. Officer Taylor then responded that he believed the person in the pictures was actually Emilee A. Costillo ("Costillo"), a "known drug dealer" and associate of Forbes. In that meeting, Officer Taylor sent a video recording depicting Costillo to ASA Goode along with her birthdate and driver's

4

license number. Soon after that meeting on November 17, 2022, Plaintiff was released from Lassalle County Jail.

On June 23, 2023, ASA Goode decided to discontinue his prosecution against Garcia. While ASA Goode testified that he still believed he had probable cause to prosecute Garcia, he ultimately dismissed the charges because the confidential informant, Gibson, broke off contact with law enforcement and had an active warrant. Without this witness, ASA Goode dismissed the charges.

> v. *Subsequent Communications with Gibson*

On September 20, 2024, Garcia's counsel in the present case informed Defendants that he located Gibson at a Texas prison and that he intended to depose him. On September 26, 2024, Plaintiff's counsel notified Defendants that Gibson was no longer at that facility and produced an affidavit from Gibson, which Plaintiff intended to use as substantive evidence. In the affidavit obtained by Garcia's counsel, Gibson stated that he did not know Garcia and that neither Officer Clift nor Officer Sarti showed him any photo after a buy to confirm whether the woman depicted was the Garcia. Gibson later conceded, however, that it was possible he had been shown photos to identify the person from whom he purchased the drugs, contradicting the affidavit obtained by Garcia's Counsel.

## A. Remaining Disputed Facts

Defendants raise objections to certain statements of fact proffered by on the basis that they are based on conjecture, not supported by the record, or inadmissible hearsay. "To be considered on summary judgment, evidence must be admissible at trial…" *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). The Court therefore addresses the admissibility of these contested facts and determines how those facts can be considered for purposes of resolving Defendants' Motions.

i.   *Statement that Officer Clift "Coached" Officer Sarti*

Defendants take issue with Garcia's statement that "Defendant Clift 'coached' and coerced Defendant Sarti to write reports indicating that Plaintiff Lucia Garcia was the one who Anthony Gibson bought drugs from on July 12, 13, 14, and 18th of 2022." Specifically, Defendants object to this proffered fact because Garcia fails to cite any admissible evidence that supports this conclusion. "While [the Court] must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party, [its] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 503 (7th Cir. 2017). The specific statement Garcia cites to support this statement comes from Officer Taylor's deposition, where he states:

A. I think Agent Sarti believed that was Lucia Garcia. I 100 percent do.· I think he was coached by Jason Clift, and Jason Clift being from Streator has dealt with Lucia Garcia a lot and I think that -- I -- I would have to think that Clift probably said that is Lucia Garcia in those photos.

(Dkt 1-6 at *75). This statement made by Officer Taylor, who does not allege he witnessed or was aware of any such "coaching," is the very speculation and conjecture that the Court will not draw inferences from. Absent any concrete evidence of such "coaching," the Court will not consider this fact for purposes of resolving these Motions.

ii.   *Statements by ASA Goode and his Secretaries*

Again, relying on Officer Taylor's testimony, Garcia seeks to proffer a fact that during Officer Taylor's meeting at ASA Goode's office, ASA Goode and his secretaries stated that "they didn't think" the woman from the video was Garcia, that they weren't "on board with it" being her, and that they "all came to agreement that [the woman in the video] was not Lucia Garcia." Defendants object to these statements on the grounds that they are inadmissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter stated. Fed. R. Evid. 801(c). Absent any indication

6

that statements by ASA Goode and his unidentified secretaries fall within a hearsay exception, the Court will not consider this statement for the truth of the matter they assert, or for any other purpose, while resolving these Motions.

### iii. Gibson's Affidavit

Garcia seeks to admit numerous statements from Gibson's 2024 Affidavit contradicting his initial identification of Garcia to dispute that Officer Sarti and ASA Goode had probable cause to arrest and prosecute her. Defendants argue that any statements from Gibson's Affidavit constitute inadmissible hearsay and do not satisfy any exclusion or exception under Federal Rule of Evidence 801(d). Inadmissible hearsay cannot be used to establish a dispute of fact at summary judgment. *Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021). Because Garcia does not provide any exclusion or exception to establish admissibility, the Court will not consider the statements in Gibson's Affidavit for purposes of summary judgement. Furthermore, since Defendants' Motions hinge on the existence of probable cause at the time of Garcia's arrest and prosecution, facts proffered from Gibson's 2024 Affidavit cannot create a dispute of material fact for determining the Officers' and ASA's determination of probable cause in 2022.

With these material issues addressed, the Court now turns to its ruling on the merits of Defendants' Motions.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all

reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted).

## III.    Discussion

A plaintiff may recover damages for Fourth Amendment, false arrest and unlawful detention claims, as well as malicious prosecution claims, when there is no probable cause. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). The existence of probable cause is a defense to both Fourth Amendment and malicious prosecution claims. *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). As such, the facts that are relevant to determining whether the officers had probable cause to arrest a plaintiff, are the same facts that are relevant to determining if probable cause existed for a plaintiff's detention and prosecution. *See Esco v. City of Chicago*, 107 F.4th 673, 677 (7th Cir. 2024). Consequently, this case turns on whether probable cause existed to originally arrest Garcia, detain her, and for her continued prosecution.

Officer Clift and the City of Streator argue summary judgement is proper for several reasons: first, because there was probable cause to seize, detain, and prosecute Garcia; second, because Garcia was indicted by a grand jury and a warrant was issued for her arrest, there is a rebuttable presumption of probable cause that Garcia has not overcome; third, because Garcia was arrested and detained only after an arrest warrant was issued, her claim for false arrest fails; fourth, because Defendants are entitled to qualified immunity as to all of Garcia's federal claims; and finally, because Garcia's claim for illegal detention is duplicative of her malicious prosecution claim. (Dkt. 114 at *1.) Officer Sarti and the City of Ottawa argue summary judgement is proper because Garcia presented no credible evidence that Officer Sarti fabricated or withheld evidence, misled prosecutors, or influenced the independent determinations of the State's Attorney, the judge, or the grand jury. (Dkt. 160 at *3.). They argue that the undisputed facts, the prosecutor's independent determination of probable cause,

and the existence of a facially valid arrest warrant all establish that Defendants are entitled to judgment as a matter of law. (*Id.*)

Garcia, by contrast, argues that Defendants' Motions should be denied because there are genuine issues of material facts barring summary judgment. (Dkt. 130 at *2.) Specifically, because Defendants' Motions ask the Court to resolve disputed facts, weigh credibility, and credit an investigation that key witnesses, supervisors, and even the prosecutor "later concluded was wrong," summary judgement is not permitted. (Dkt. 179 at *3.)

The Court will address the merits of these arguments in turn.

### A. Probable Cause Determination (Counts I and II)

Probable cause is a "common-sense inquiry requiring only a probability of criminal activity;" probable cause exists "whenever an officer has enough information to warrant a prudent person to believe criminal conduct has occurred." *Leaver v. Shortess*, 844 F.3d 665, 669 (7th Cir. 2016) (quoting *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010)). Officers making probable-cause determinations "are entitled to draw reasonable inferences from the facts before them, based on their training and experience." *Funches*, 327 F.3d at 586. Additionally, a presumption of probable cause arises after a judicial determination of probable cause. *Washington*, 98 F.4th at 863. To overcome this presumption, plaintiffs must show "that the officer who sought the warrant (1) 'knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and (2) that the false statements were necessary to the judicial officer's determination that probable cause existed for the arrest.'" *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010).

In their Motion, Officer Clift and the City of Streator argue Garcia's false arrest and illegal detention claims fail as a matter of law because she has not overcome the presumption of probable cause established by the arrest warrant and grand jury indictment. (Dkt. 114 at *4.) Defendants further argue that Plaintiff's principal theory that Gibsons identification of Garcia was fictitious, is

flawed for three reasons: first, whether Gibson identified Plaintiff is irrelevant as Defendants had probable cause to arrest Plaintiff after separately concluding it was her on the video; second, even if the court were to analyze Gibson's testimony in the present case, probable cause would still have been present in November 2022, when Plaintiff was arrested; finally, even if the Court considers that Gibson recanted his testimony, this does not negate that probable cause existed at the time of the arrest based on the information available to the officers. (*Id.* at *4-5.) Finally Defendants argue that even if the prosecutor, judge, and grand jury relied on Gibson's alleged fictitious identification, Garcia cannot show these facts were "necessary" to the judicial determination of probable cause as required to overcome its validity. (*Id.* at *8.)

In their Motion, Officer Sarti and the City of Ottawa similarly argue that the existence of a properly obtained arrest warrant, and the presumption of probable cause that goes with it, defeats the false arrest and false imprisonment claims asserted here. (Dkt. 160 at *8.) Defendants first emphasize Officer Sarti turned the report of the investigation over to the LaSalle County State's Attorney's Office. (*Id.*) That office, without further input from Officer Sarti, determined that charges should be against Garcia. (*Id.*) Next, Defendants argue, to the extent Garcia's claims hinge on an assertion that Officer Sarti provided false or misleading testimony in the criminal proceedings, that argument fails as a matter of law because he enjoys absolute immunity for any such testimony. (*Id.* at *6.) (citing *Khorrami v. Rolince*, 539 F.3d 782, 789 (7th Cir. 2008) (explaining witnesses in criminal proceedings, including police officers, enjoy absolute immunity from civil liability under § 1983 for their testimony, even if it is alleged to be false.)). Finally, Defendants argue, Gibson's recantation, obtained nearly two years after Garcia's arrest, cannot create a genuine dispute of material fact sufficient to overcome the

10

presumption of probable cause established by the judicially issued arrest warrant and the independent prosecutorial determinations that occurred at the time of Garcia's arrest. (Dkt. 160 at *7.)

Garcia responds to Officer Clift and the City of Streator by asserting "the most reasonable inference to take from all of the evidence in this case is that Defendants Clift and Sarti fabricated their basis for probable cause against Garcia based solely on the fact that the father of her children was the target of their investigation." (Dkt. 130 at *1-2.) Garcia asserts, when Officer Sarti viewed Gibsons' video recording of a Latina, he made improper assumptions that Garcia was the individual in that video solely because of her race and her prior relationship with Forbes. (Dkt. 130 at *2.) Garcia then asserts that Officer Sarti, at Officer Clift's direction, created false reports that ASA Goode used as the "sole" basis to bring charges against Garcia. In addition to this issue, Garcia asserts there are multiple factual issues that necessitate denial of summary judgement: first, Officer Sarti was never present at the scene to personally identify Garcia; second, the video evidence creates a reasonable disagreement on whether Officer Sarti could actually identify Garcia; and finally, Officer Taylor's testimony calls into question ASA Goode's probable cause determination after Officer Taylor provided him information of an alternative suspect. (*Id.* at *6-7.)

Garcia responds to Officer Sarti and the City of Ottawa by asserting that Officer Sarti made statements in his reports "from which a reasonable jury could conclude that he knowingly misrepresented that Anthony Gibson positively identified the Plaintiff and further omitted from the investigative file the picture that he alleged was relied on when submitting the file to States Attorney Jason Goode." (Dkt. 179 at *6.) Garcia next argues that the presumption of probable cause gives way to her showing of fact that Officer Sarti made false statements or omitted facts to a judicial officer which were necessary to the judicial officer's determination. (*Id.* at *6-7.) Finally, Garcia argues her claims are not subject to summary judgement because they necessitate creditability determinations and

require a finder of fact to weigh any alleged inconsistencies in Gibson's testimony, which is generally the province of the jury.  (Dkt. 179 at *12.)

As an initial matter, the Court reiterates that it will not draw inferences that are supported solely by speculation or conjecture when resolving these Motions.  *See Monroe v. Indiana Dep't of Transportation*, 871 F.3d at 503.  Garcia's assertions that Officer Clift and Officer Sarti fabricated reports to provide to ASA Goode and that Officer Sarti misrepresented his and Gibson's identification of Garcia, are not supported by any admissible evidence in the record.  The Court, therefore, will not consider these speculative theories when determining the merits of Garcia's false arrest and unlawful detention claims against Defendants.

As to her false arrest claims, generally, a person arrested pursuant to a facially valid warrant cannot prevail on a false arrest claim, even if it is later determined that a warrant had an inadequate factual foundation.  *Williamson v. Curran*, 714 F.3d 432, 443-44 (7th Cir. 2013); *see Bianchi v. McQueen*, 818 F.3d 309, 322 (7th Cir. 2016) (a false arrest claim arises "from a warrantless arrest without probable cause").  There is, however, a recognized exception for situations where officers knew that the arrest warrant was issued without probable cause, especially when the individuals obtaining the warrant deceived the authorizing body to obtain it.  *See id.*  The record does not show that this exception applies.  Garcia cannot maintain her claim against the Officer Defendants because it was the state's attorney's office, and not Officer Clift or Sarti, who determined probable cause existed and sought Garcia's warrant and arrest.  It was ASA Goode's determination of probable cause that led to her warrant and arrest.  The record also does not identify any alleged misstatements that were material to the probable cause determination.  Gibsons' 2024 recantation does not create a dispute of material fact as to whether ASA Goode had probable cause in 2022.  Even assuming Gibson did not identify Garcia, probable cause existed based on Officer Sarti's visual comparison of the covert camera footage

12

and its comparison to Garcia's Facebook photos, ASA Goode's independent visual confirmation of the same, a properly obtained arrest warrant, and the grand jury's indictment of Garcia.

While the Court is mindful that discrepancies in video evidence often make summary judgement improper, *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2024), a determination of whether the Officer Defendants and ASA Goode believed that Garcia was the individual depicted in the video, based on what they knew at the time, does not create a dispute of material fact that can be resolved by a jury's review. Their identification of Garcia, albeit an alleged incorrect identification, is protected by arguable probable cause. *Fleming v. Livingston County, Illinois*, 674 F.3d 874, 878 (7th Cir. 2012) (arguable probable cause, or mistaken probable cause, is established when "a reasonable police officer in the same circumstances and ... possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed."). Even if Defendants were mistaken in their identifications based on racial assumptions, because the admissible evidence shows Defendants at least had arguable probable cause to believe Garcia was the woman depicted on the video, Garcia cannot overcome the presumption of probable cause created by multiple independent identifications, a judicial arrest warrant, and a grand jury indictment. The Court therefore grants Defendants' Motion for Summary Judgement on Garcia's false arrest claim.[1]

This finding does not, however, automatically entitle Defendants to summary judgment on Garcia's illegal detention claim. She can also recover damages for "ensuing pretrial detention without probable cause," when probable cause was obtained through fabricated evidence. *Manuel*, 580 U.S. at

---

[1] The Court acknowledges had Garcia brought a *Monell* claim alleging an official custom or policy of racial discrimination, the outcome of Garcia's claims may have differed, at least as they relate to the City Defendants. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)(subjecting defendants to municipal liability based on a policy, practice, or custom that resulted in a constitutional violation). The record shows that the Defendants may have mistakenly identified Garcia as the woman in the video based on racial profiling. This alleged misidentification, coupled with evidence of repeated misidentification of Latino suspects by Tri-Dent and the LaSalle County State's Attorney's Office, could become actionable.

13

367. This is because fabricating evidence can harm a person charged with a crime "before and not just during the trial, [where] it was used to help indict him," and the indictment leads to a nontrivial period of pretrial detention  *Fields v. Wharrie* ("*Fields II*"), 740 F.3d 1107, 1114 (7th Cir. 2014) (citing *Julian v. Hanna*, 732 F.3d 842, 847 (7th Cir. 2013). Specifically, where an unbroken causal chain connects the acts of evidence fabrication to an individual's imprisonment, defendants can be liable for a plaintiff's detention without probable cause. *See*, e.g., *Avery v. City of Milwaukee*, 847 F.3d 433, 439–40 (7th Cir. 2017). While Garcia is not automatically foreclosed from recovering damages for her 17-days in detention, in the present instance, where she has not shown any proof that the Officer Defendants fabricated evidence to influence ASA Goode's determination that he had probable cause to prosecute and detain her, Garcia's illegal detention claim also fails.

## A. Malicious Prosecution Claims (Count III and IV)

In Counts III and IV of her Complaint, Garcia alleges that Officers Sarti and Clift maliciously prosecuted her, in violation of the Constitution and Illinois law. To prevail on a federal malicious prosecution claim, a plaintiff must prove that the malicious prosecution resulted in a seizure, or detention, of the Plaintiff. *See Thompson v. Clark*, 596 U.S. 36, 43 n. 2, (2022); see *Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025) (noting a plaintiff must prove they were detained after "legal process," or after criminal charges were filed). To prevail on a malicious-prosecution claim under Illinois law, plaintiffs must show that: "(1) [they were] subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff[s'] favor; and (5) there was an injury." *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) (internal citation omitted). Importantly, because "[t]he State's Attorney, not the police, prosecutes a criminal action…. [t]he chain of causation [between a wrongful arrest and post-indictment tort liability] is broken by an indictment," absent an

14

allegation of misstatements or influence exerted by the police officers. *See Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017).

Officer Clift and the City of Streator argue that Garcia's federal malicious prosecution claim fails because it is duplicative of Garcia's illegal detention claim. (Dkt. 114 at *12.) (citing *Smith v. Chicago*, 2024 WL 3757127, at *2 (N.D. Ill. Aug. 12, 2024) (Coleman, J.)(explaining that a Fourth Amendment claim of illegal pretrial detention, or "unreasonable seizure pursuant to legal process," is analogous to a malicious prosecution claim)). Defendants also argue Garcia's state malicious prosecution claim fails because the indictment by the grand jury breaks the chain of causation. (Dkt. 114 at *14-15.) Further, they argue, it is undisputed that ASA Goode reviewed the evidence and sought the arrest warrant for Garcia on his own, meaning Garcia cannot maintain malicious prosecution claims against the Officer Defendants because she cannot show that they caused (commenced or continued) her prosecution. (*Id.* at *13.)

Officer Sarti and the City of Ottawa also argue that Garcia's federal malicious-prosecution claim fails because it is duplicative of her illegal detention claim. (Dkt. 160 at *10-11.) Regarding the state malicious prosecution claim, they argue a malicious prosecution action against a police officer is anomalous because the charges were prosecuted by the State's Attorney and not the police. (*Id.* at *11)(citing *Snodderly v. R.U.F.F. Drug Enf't Task Force*, 239 F.3d 892, 901 (7th Cir. 2001)). Notwithstanding this anomaly, Defendants similarly argue they are still entitled to summary judgement on the malicious prosecution claims because of the independently obtained judicial determination of probable cause. (*Id.* at *11.) Without any influence from Officer Sarti, ASA Goode independently decided to obtain a warrant for Garcia's arrest. (*Id.*) Following her arrest, ASA Goode again reviewed the matter and made the prosecutorial decision to proceed before a grand jury, which returned a true bill indicting Garcia, a second judicial confirmation that the arrest and prosecution of Plaintiff were supported by adequate legal grounds. (*Id.* at *12-13.) Defendants conclude that it is problematic

15

Garcia did not sue the prosecutors but instead sued the Officers who did not request charges against Garcia and who are not liable for what the prosecutors did, or did not, do.  (*Id.* at *13.)

Garcia, in response, argues that her federal malicious prosecution claim is not duplicative of her illegal detention claim because, rather than addressing her injuries from her pre-indictment arrest, it addresses her post-charge seizure pursuant to criminal proceedings. (Dkt. 179 at *15-16.)  Regarding her state claims, Garcia argues they can survive against the Officer Defendants because she alleges "misstatements and falsehoods" they made that "completely influenced the prosecutor in this case." (*Id.* at *8.)  Garcia argues, because there is a dispute of material fact as to whether Gibson identified Garcia, and since Officer Sarti's reports relied on that identification, "all of the written evidence that the prosecutor relied on in this case was false and material in the prosecution of the Plaintiff."  (*Id.* at *9.)  Garcia concludes, because the prosecution was initiated and continued without probable cause, because there was a seizure after the commencement of the legal process, and because the proceedings were terminated in her favor, Plaintiff has stated a viable malicious prosecution claim under the Fourth Amendment and Illinois law.  (*Id.* at *15.)

Since the Court granted Summary Judgement on Garcia's illegal detention claim, it need not determine if her malicious prosecution claim is duplicative.  Unfortunately for Garcia, however, her malicious prosecution claim fails because she cannot show that the Officer Defendants caused, commenced, or continued her prosecution.  While Garcia argues Officer Sarti "commenced or continued" her arrest by submitting investigative reports that allegedly contained misstatements, the undisputed record establishes that Officer Sarti did not decide whether Plaintiff would be charged, arrested, or prosecuted.  He submitted his investigative reports to ASA Goode, who independently reviewed the evidence, determined that probable cause existed, sought an arrest warrant from a neutral judge, and later presented the case to a grand jury who all found probable cause, breaking the chain of causation necessary to maintain her claim against the Officer Defendants.  While Garcia seeks to

allege Officer Sarti fabricated claims in his report to ASA Goode, as stated, Garcia provides no admissible evidence supporting this theory. The only reasonable conclusion to be drawn from the undisputed evidence is that ASA Goode maintained control over Garcia's prosecution, without the influence of the Officer Defendants, as evidence by his independent fact-gathering and decision to prosecute Garcia, rendering superfluous any alleged misleading statements. *See Washington*, 98 F.4th at 874.

Finally, the eventual dismissal of her criminal case does not undermine the probable cause determinations, because the undisputed record shows, the dismissal was driven by practical evidentiary concerns, namely, that the confidential informant had broken off contact with law enforcement and was subject to an active warrant, not because probable cause was lacking. In fact, ASA good Goode testified that he believed probable cause existed against Plaintiff up until the charges were dismissed. Accordingly, the Court grants Defendants' Motion for Summary Judgement on Garcia's malicious prosecution claims. [2]

The Court declines to address whether the Officer Defendants are entitled to qualified immunity on all federal claims since it granted summary judgment on independent grounds. Additionally, because the Court granted summary judgement to Defendants on claims I-IV, Garcia's derivative liability claims against the City of Streator and City of Ottawa based on those claims, also fail.

## IV. Conclusion

---

[2] The Court acknowledges had Plaintiff brought her claims against ASA Goode, who made the prosecutorial decisions and who it appears failed to investigate or prosecute an alternative suspect, her claims may have been viable. Her decision to bring claims against the Officer Defendants, however, without any admissible proof that they fabricated evidence to influence ASA Goode, dooms her claims.

17

For the foregoing reasons, the Court grants Defendants' Motions for Summary Judgement in full [113, 158].

IT IS SO ORDERED.

Date: 3/31/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

18